NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1173

DEPUY MITEK, INC.,

Plaintiff-Appellant,

v.

ARTHREX, INC.
and PEARSALLS LIMITED,

Defendants-Appellees.


Dianne B. Elderkin, Woodcock Washburn LLP, of Philadelphia, Pennsylvania, argued for plaintiff-appellant. With her on the brief were Lynn A. Malinoski, Michael J. Bonella, Erich M. Falke, and Angela Verrecchio.

Charles W. Saber, Dickstein Shapiro LLP, of Washington, DC, argued for defendants-appellees. With him on the brief were Stephen A. Soffen, and Salvatore P. Tamburo.

Appealed from: United States District Court for the District of Massachusetts

Judge Patti B. Saris

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1173

DEPUY MITEK, INC.,

Plaintiff-Appellant,

v.

ARTHREX, INC. and PEARSALLS LIMITED,

Defendants-Appellees.

Appeal from the United States District Court for the District of Massachusetts in case no. 04-CV-12457, Judge Patti B. Saris.

_____

DECIDED: October 30, 2008

_____

Before NEWMAN and LINN, Circuit Judges, and O'GRADY, District Judge.[*]

LINN, Circuit Judge.

Depuy Mitek, Inc. ("Mitek") appeals from a final judgment of the U.S. District Court for the District of Massachusetts, Depuy Mitek, Inc. v. Arthrex, Inc., No. 04-CV-12457 (D. Mass. Aug. 16, 2007), entered after a jury found that Arthrex, Inc. and Pearsalls Limited (collectively, "Arthrex") did not infringe Mitek's U.S. Patent No. 5,314,446 ("the '446 patent"). On appeal, Mitek challenges the district court's denials of its motion for judgment as a matter of law and its motion for new trial. Because the evidence introduced at trial supports the jury's verdict, we affirm.

_____

[*] Honorable Liam O'Grady, District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

## I. BACKGROUND

The '446 patent is directed to "sterilized heterogeneous braids." In general terms, the invention of the '446 patent relates to a braided suture used in orthopedic surgery that is made from at least two sets of dissimilar yarns. According to the specification of the '446 patent, this heterogeneous braiding method using different types of yarns improves certain desirable properties of the suture, including handleability and pliability. See '446 patent, col. 2, ll. 62-66. Claim 1 is representative of the invention:

> 1. A surgical suture consisting essentially of a heterogeneous braid composed of a first and second set of continuous and discrete yarns in a sterilized, braided construction wherein at least one yarn from the first set is in direct intertwining contact with a yarn from the second set; and
>     a) each yarn from the first set is composed of a plurality of filaments of a first fiber-forming material selected from the group consisting of PTFE, FEP, PFA, PVDF, PETFE, PP and PE; and
>     b) each yarn from the second set is composed of a plurality of filaments of a second fiber-forming material selected from the group consisting of PET, nylon and aramid; and
>     c) optionally a core.

In September 2005, Mitek filed suit against Arthrex. It argued that Arthrex's FiberWire product ("FiberWire") infringed the '446 patent. During the course of the proceedings, the district court construed the claim terms in dispute. Because the claims use the transitional phrase, "consisting essentially of," the district court also examined the basic and novel characteristics of the invention. The case eventually went to trial on whether Arthrex's manufacture and sale of FiberWire infringed claims 1, 2, 8, 9, and/or 12 of the '446 patent. The parties stipulated that infringement of the asserted claims would rise or fall with infringement of claim 1, and that Arthrex's FiberWire contained every recited limitation of that claim. Thus, the only question for the jury to resolve was whether a silicone coating added to FiberWire—an element in addition to those listed in

the claim—materially affected the basic and novel properties of the invention and thus took the accused structure out of the scope of coverage of the claims.

After a six-day trial on this issue, the jury returned a verdict of non-infringement in favor of Arthrex. Following trial, Mitek renewed its motion for judgment as a matter of law and also moved for new trial. The district court denied Mitek's motions without opinion. Mitek appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

The grant or denial of a motion for judgment as a matter of law or a motion for new trial is reviewed under the law of the regional circuit. Riverwood Int'l Corp. v. R.A. Jones & Co., 324 F.3d 1346, 1352 (Fed. Cir. 2003). The First Circuit reviews rulings on motions for judgment as a matter of law de novo. Porto v. Town of Tewksbury, 488 F.3d 67, 72 (1st Cir. 2007). A district court's denial of a motion for judgment as a matter of law must be affirmed "unless the evidence was 'so strongly and overwhelmingly' inconsistent with the verdicts that no reasonable jury could have returned them." Id. (citation omitted). The First Circuit reviews rulings on motions for new trial for abuse of discretion. Goulet v. New Penn Motor Express, Inc., 512 F.3d 34, 44 (1st Cir. 2008). "A district court should grant a motion for a new trial only if 'the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.'" Id. (citation omitted).

## B. Analysis

### 1. Jurisdiction

As a threshold issue, Arthrex argues that we lack subject matter jurisdiction over this appeal. At the close of Arthrex's case at trial, counsel for Mitek moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), stating: "Your Honor, they have a declaratory judgment counterclaim for noninfringement, and we're moving as a matter of law on that counterclaim." J.A. at 2133-34. The district court denied Mitek's motion without permitting its counsel to elaborate on the grounds for the motion. Arthrex now contends that Mitek's motion was deficient because it failed to conform to Rule 50 by "specify[ing] the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Arthrex argues that because the motion for judgment as a matter of law was deficient under Rule 50(a), Mitek's attempt to renew that motion under Rule 50(b) was also deficient. Thus, according to Arthrex, Mitek's notice of appeal was untimely because the deadline for filing that notice was not tolled by the improper renewed motion for judgment as a matter of law.[1]

We disagree. Only one issue was tried to the jury: whether the coating on Arthrex's FiberWire materially affected the basic and novel characteristics of the invention of the '446 patent, warranting a judgment of non-infringement. Thus, when Mitek "mov[ed] as a matter of law on that counterclaim," it was adequate to put Arthrex and the district court on notice of the grounds for the motion. See <u>Cambridge Plating</u>

---

[1] Arthrex also argues that Mitek's motion for new trial was insufficient to toll the deadline for filing a notice of appeal. Because we find, <u>infra</u>, that Mitek's renewed motion for judgment as a matter of law was sufficient to toll the deadline, we need not and do not reach Arthrex's argument with respect to the motion for new trial.

Co. v. Napco, Inc., 85 F.3d 752, 760 (1st Cir. 1996). Moreover, the district court denied Mitek's motion without permitting counsel for Mitek to elaborate, J.A. at 2134, which indicates either that it was aware of the grounds for the motion or that it perceived no need to hear them. Under these circumstances, Mitek's motion for judgment as a matter of law was sufficient under Rule 50(a)(2). See Wilson Sporting Goods Co. v. Geoffrey & Assocs., 904 F.2d 677, 683 (Fed. Cir. 1990). Consequently, its renewed motion also was proper and tolled Mitek's deadline to file a notice of appeal.

2. Renewed Motion for Judgment as a Matter of Law

Because claim 1 uses the transitional phrase, "consisting essentially of," it covers products or devices which include the listed elements, as well as unlisted elements, so long as the unlisted elements "do not 'materially affect the basic and novel properties of the invention.'" AK Steel Corp. v. Sollac, 344 F.3d 1234, 1239 (Fed. Cir. 2003) (citation omitted). The district court defined the basic and novel characteristics of the invention of the '446 patent as:

> (1) a surgical suture, (2) composed of two dissimilar yarns from the lists in Claim One, (3) where at least one yarn from the first set is in direct intertwining contact with the yarn from the second set, (4) so as to improve pliability and handleability without significantly sacrificing the physical properties of the constituent elements of the suture.

Depuy Mitek, Inc. v. Arthrex, Inc., No. 04-CV-12457, slip op. at 18-19 (D. Mass. Jan. 31, 2007). Mitek does not challenge the district court's identification of the basic and novel characteristics of the invention. It does, however, argue that there is insufficient evidence to support the jury's finding that FiberWire's coating materially affects these basic and novel properties. Mitek provides a host of arguments to support this contention. As discussed below, we find them unpersuasive.

2008-1173                          5

Mitek's primary argument on appeal is that "[t]he basic and novel characteristics relate to the contribution of the novel braid structure to handleability and pliability, not to handleability and pliability per se." Appellant's Reply Br. at 13; see also Appellant's Br. at 31. In other words, because the coating applied is only a surface coating, that coating "does further improve the handleability performance of the braid," but it "does not . . . affect the inventive heterogeneous multifilament internal braid structure which imparts handleability and pliability to the suture to begin with." Appellant's Br. at 24 (emphases omitted). We reject this argument, because Arthrex presented evidence at trial that that the silicone coating did permeate the surface of the suture, reaching the braid, and that this materially improved the handleability and pliability of the suture by lubricating the interlocking yarns. J.A. at 2071-72; cf. id. at 1594. Arthrex also presented evidence at trial that, even if it the coating did not penetrate the surface, it still materially affected the physical properties of the suture, both positively and negatively. For example, Arthrex presented evidence that the handleability and pliability of the suture of the '446 patent were dramatically improved by the addition of a coating. Id. at 1943-47, 2572-80; see also id. at 1777-78 (evidence that a coating is a virtual necessity for use in orthopedic surgery due to the high surface friction of uncoated, braided sutures.). Arthrex also presented evidence that the coating materially improved "knot rundown"—i.e., the ease with which a knot is slid down the suture. Id. at 2408-10. Finally, Arthrex presented evidence that the coating had a significant negative effect on knot security—i.e., the ability of the suture to hold a knot. Id. at 1968-69, 2579. Although Mitek presented evidence to the contrary, the jury could have reasonably

relied upon the evidence presented by Arthrex in concluding that the addition of the coating to the suture materially affected its pliability and handleability.

Finally, Mitek argues that because the specification of the '446 patent contemplates that a coating may be added to the claimed suture, Arthrex's addition of a coating cannot possibly materially affect the basic and novel properties of the invention. We agree that the specification teaches that a coating may be added. See, e.g., '446 patent, col. 6, ll. 5-8 ("If desired, the surface of the heterogeneous multifilament braid can be coated with a bioabsorbable or nonabsorbable coating to further improve the handleability and knot tiedown performance of the braid."). However, as Arthrex points out, the specification also criticizes coatings. For example, it discusses the "deficiencies which plague conventionally coated multi-filament sutures." Id., col. 2, ll. 12-13. It also teaches that "if the surface of the heterogeneous braid is engineered to possess a significant fraction of the lubricous yarn system, the conventional coating may be eliminated saving expense as well as avoiding the associated braid stiffening." Id., col. 6, ll. 13-17. Thus, as the district court observed, the patent "says all things to all people," and thus it does not save Mitek from the jury's verdict that the addition of a silicone coating materially affected the basic and novel characteristics of the invention.

### 3. Motion for New Trial

Mitek argues that the district court abused its discretion by denying its motion for new trial because the jury's verdict is "plainly against the weight of the credible evidence." Appellant's Br. at 51. As discussed above, in light of the evidence presented, the jury's determination that the addition of the silicone coating materially

affected the basic and novel properties of the invention is not unreasonable. Thus, the district court did not abuse its discretion by denying Mitek's motion for new trial.

## III. CONCLUSION

The district court's denials of Mitek's renewed motion for judgment as a matter of law and motion for new trial are <u>AFFIRMED</u>.